IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CR-40-BO

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **ORDER OF DETENTION PENDING** |
| | ) **TRIAL** |
| ALEC REDNER, | ) |
| | ) |
| Defendant. | ) |

This case came before the court yesterday, 3 April 2014, for a hearing on the government's motion, pursuant to 18 U.S.C. § 3142(f), to detain defendant pending trial. The government presented the testimony of a detective with the Raleigh Police Department and three exhibits.[1] Defendant presented the testimony of the proposed third-party custodian, his girlfriend.[2] The court also reviewed the pretrial services report. After careful consideration pursuant to 18 U.S.C. § 3142(g) of the credible information and argument submitted, and based on the findings and reasons stated below and in open court, the court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure defendant's appearance as required, and by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community before trial if defendant is released. The government's motion is therefore GRANTED.

---

[1] Gov. Ex. 1 is a letter sent by defendant to his mother from the Wake County jail dated 14 Feb. 2014; Gov. Ex. 2 is a recording of a telephone call by defendant from the Wake County jail to his mother on 20 Feb. 2014; and Gov. Ex. 3 is a report by a deputy of the Oliver County, North Dakota Sheriff's Office about his encounter with defendant on 1 Dec. 2012.

[2] Defendant initially identified his mother as a proposed third-party custodian. The court expressed the view that she was a potential witness in the case and therefore unsuitable as a custodian, but invited defendant to present argument on the issue. He did not do so and withdrew his mother from consideration.

## Background

Defendant was charged in a one-count indictment on 18 March 2014 with transmitting in interstate and foreign commerce, via computer and the Internet, a communication containing a threat to injure the person of another individual on 13 January 2014 in violation of 18 U.S.C. § 875(c). The evidence presented at the hearing showed that on the alleged offense date defendant sent from a laptop computer at his home a message to the website of Raleigh Mayor Nancy McFarlane reading as follows:

> Go f _ _ k yourself, communist. You make a joke about the U.S. Constitution. But soon you will be on the other end of a barrel, bitch. Watch out.[3]

Police linked the message to the residence of defendant's mother, where both of them live.

Around 7:00 p.m. the following day, 14 January 2014, two police detectives went to the residence to conduct a "knock and talk." After someone looked out a window, a female (believed to be defendant's mother), asked what the police wanted and appeared to be approaching the door when a male (believed to be defendant) stated, "F - - k them" and "F - - k Nancy McFarlane." The detectives left out of concern for their own safety and that of defendant's mother. Police have a warning associated with the residence indicating, among other things, that defendant had previously fought and run from the police and had previously been in possession of an assault-type rifle.

A larger group of officers returned to the home later than evening. As they arrived, defendant fled out the back door of the house. The police explained to defendant's mother that they were investigating the message to the Mayor's website. She stated, among other things, that defendant mistrusts the government. Police advised her that they were going to seek a search warrant.

---

[3] Because the statement was presented in oral testimony, the punctuation and spelling are the court's.

Later that night, around 12:15 a.m. on 15 January 2014, police returned to conduct the search. Defendant's mother and a male friend of hers were belligerent and police handcuffed them. Defendant's mother cursed at the officers and told them they were Nazi storm troopers and working for criminals. The search yielded multiple laptops, but none contained the message that had been sent to the Mayor's website. The search also yielded a shotgun belonging to the friend of defendant's mother, multiple rounds of handgun ammunition (some spent), and, from the dresser in defendant's room, what defendant's mother described as his "go bag"—a bag containing such supplies as propane tanks and MREs (*i.e.*, meals ready to eat) for survival in an emergency. The police arrested defendant the following day, 16 January 2014.

Defendant subsequently put in the mail from the Wake County jail a letter to his mother, dated 14 February 2014 (Gov. Ex. 1), in which he asks her to destroy a laptop he states he hid in the crawlspace of the house. He said that in a future conversation he would ask her, "Did dad get my letter?" and that she was to respond "yes" if she had destroyed the laptop.

After police intercepted the letter (inmates are given notice that all mail is subject to search), the police conducted another search of the house and found the laptop in the crawl space. It contained the message sent to the Mayor's office.

In a telephone call defendant made to his mother from the Wake County jail on 20 February 2014 (*see* Gov. Ex. 2), he followed through on his letter and asked her the coded question about the laptop. She did not understand because of the interception of the letter by the police. She went on to state, among other things, that the police had planted the laptop subject to the search.

Defendant has been involved in three encounters with law enforcement officers in which he has attempted to flee from or has assaulted them. In the first incident, on 21 February 2010 in

3

the Wake County area, defendant backed his truck into the car of a police officer who had effected a traffic stop of defendant based on suspected impaired driving due to marijuana and attempted to flee. He pled guilty to three misdemeanors resulting from this incident: assault on a government official, driving while impaired, and flee or elude arrest with a motor vehicle.

In an incident in May 2010, again in the Wake County area, defendant drove from officers attempting a traffic stop at speeds up to 100 m.p.h. Defendant's car eventually crashed, he fled on foot, and police found an assault rifle in it. He later pled guilty to felony elude arrest.

In the latest incident, on 1 December 2012, in North Dakota, defendant attempted to strangle an officer who was investigating his involvement in a hit-and-run collision and attempting to administer a breathalyzer test. (*See* Gov. Ex. 3). Defendant had to be Tasered four times before he would submit to the police. He later pled guilty to misdemeanor preventing arrest or discharge of other duties and driving under the influence of alcohol.

In addition to the foregoing convictions, defendant has a conviction for criminal contempt and one for misdemeanor reckless driving to endanger.

## **Discussion**

The law requires that defendant be detained pending trial based on the following principal findings and reasons: evidence showing that the government has a strong case, including the evidence reviewed above; the violent nature of the offense charged; the circumstances of the offense charged, including the clearly threatening nature of the message, defendant's transmission of it to the purported target's website, the presence of a shotgun (necessarily having at least one barrel) in defendant's residence, and his attempt to destroy evidence of the threat; defendant's criminal record, showing clear hostility to law enforcement officers; the danger of continued threats by defendant against the Mayor and to the safety of

supervising probation officers if he were released; the unsuitability of the proposed third-party custodial arrangement due to the unsuitability of the proposed custodial home, lack of clarity about the motivation of the proposed custodian to serve as such (because, *e.g.*, she has dated defendant for less than four months and she would have to leave her home in Hope Mills and her two teen-aged children who live with her to serve as custodian in defendant's residence), and the extent of the risk of flight and danger presented by defendant; and the other findings and reasons stated in open court.

The court considered evidence offered as mitigating, such as defendant's long-term ties to Wake County. It finds, however, that the factors favoring detention outweigh such evidence.

Defendant cited two cases, *Watts v. United States*, 394 U.S. 705, 706 (1969) and *United States v. White*, 670 F.3d 498, 509 (4th Cir. 2002), as purportedly showing that the charges against him are legally deficient, although he acknowledged that the issue of the legal sufficiency of the charges was not before the court. The court reviewed the cases nonetheless and finds them readily distinguishable.

## Conclusion

IT IS THEREFORE ORDERED that defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

5

Case 5:14-cr-00040-BO   Document 15   Filed 04/04/14   Page 5 of 6

This, the _4_ day of April 2014.

_____
James E. Gates
United States Magistrate Judge